66 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
IN RE GRAND JURY PROCEEDINGS.
Randy GLESSNER, Witness-Appellant,
v.
UNITED STATES of America, Appellee.
 No. 95-35761.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 30, 1995.*
Decided Aug. 30, 1995.
 
 1
 Before: ALARCON, FERNANDEZ and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Randy Glessner appeals the district court's adjudication of civil contempt under 28 U.S.C. Sec. 1826(a) for his refusal to testify before the grand jury. Glessner contends the district court's contempt order was in error because: (1) the district court never unequivocally ordered him to testify prior to finding him in contempt; and (2) he properly invoked his Fifth Amendment right against self-incrimination when declining to answer the questions asked of him. We have jurisdiction under 28 U.S.C. Sec. 1291, see In re Dual-Deck Video Cassette Antitrust Litigation, 10 F.3d 693, 695 (9th Cir.1993), and affirm.
 
 
 4
 We review for an abuse of discretion the district court's adjudication of civil contempt. United States v. Grant, 852 F.2d 1203, 1204-05 (9th Cir.1988).
 
 
 5
 a. Background
 
 
 6
 The federal government is currently investigating two individuals, Roy and Jackie Stoddard, in their personal capacity and Roy Stoddard in his capacity as a partner of S & N Logging. The Stoddards are allegedly involved in laundering money from narcotics trafficking. As part of this investigation, federal officials are looking into possible false reporting or underestimating of income by the Stoddards during tax years 1989-1991. Glessner was one of three accountants the Stoddards employed in this time period. He apparently prepared tax returns for the Stoddards for the 1990 tax year.
 
 
 7
 The government intended and attempted before the grand jury to ask Glessner approximately 103 questions in 16 general subject areas. Glessner answered only those few questions pertaining to his personal identification information and professional qualifications. He claimed the privilege against self-incrimination in response to all questions enquiring into his personal and professional relationship with the Stoddards, the methodology he followed in preparing the returns, who provided the working papers upon which the returns were based, and the discussions Glessner had with the Stoddards regarding preparation of the returns.
 
 
 8
 b. Order Compelling Testimony
 
 
 9
 Glessner contends that he cannot be cited for contempt because the district court never specifically ordered him to testify. This contention is without merit.
 
 
 10
 A grand jury witness is not guilty of contempt merely for declining to answer questions put to him before the grand jury. Brown v. United States, 359 U.S. 41, 49-50 (1959); United States v. Cantillon, 309 F.Supp. 700, 703 (C.D.Cal.1970). Rather, the witness must decline to testify after the court has "unequivocally" ordered him to do so before being found guilty of contempt. Brown, 359 U.S. at 50; cf. In re Grand Jury Proceedings (Ortloff), 708 F.2d 1455, 1457-58 (9th Cir.) (proper procedure to follow before finding witness in contempt is to first unequivocally order witness to answer grand jury questions), cert. denied, 464 U.S. 1001 (1983).
 
 
 11
 Here, the district court's July 13, 1995 order specifically granted the government's oral motion requesting that the court order Glessner to answer a list of questions previously approved by the court.
 
 
 12
 This order was an unequivocal direction from the district court that Glessner answer the questions put to him before the grand jury. Accordingly, the district court followed the proper procedure before finding Glessner in contempt, see Ortloff, 708 F.2d at 1457-58, and Glessner could be cited for contempt based upon his failure to comply with this unequivocal order to testify, see Brown, 359 U.S. at 50.
 
 
 13
 c. Invocation of the Fifth Amendment Privilege
 
 
 14
 Glessner contends that he was justified in claiming the Fifth Amendment privilege against self-incrimination in response to the vast majority of the questions propounded in front of the grand jury. This contention also lacks merit.
 
 
 15
 "A witness who refuses without just cause to comply with an order of the court to testify before the grand jury may be held in civil contempt." In re Grand Jury Proceedings (Chesnoff), 13 F.3d 1293, 1295 (9th Cir.1994).
 
 
 16
 A valid assertion of the Fifth Amendment right against self-incrimination would be just cause for failure to comply with a district court order to testify. Id.; see also Kastigar v. United States, 406 U.S. 441, 444-45 (1972) ("[T]he most important [exemption from the testimonial duty] is the Fifth Amendment privilege against compulsory self-incrimination.") Pursuant to the Fifth Amendment, "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The witness, however, "is not exonerated from answering merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified." Hoffman v. United States, 341 U.S. 479, 86 (1951).
 
 
 17
 We have articulated specific standards for the evaluation of a claim of Fifth Amendment privilege in the testimonial context:
 
 
 18
 "To claim the privilege validly a defendant must be faced with substantial hazards of self-incrimination that are real and appreciable and not merely imaginary and unsubstantial. Moreover, he must have reasonable cause to apprehend [such] danger from a direct answer to questions posed to him." The existence of such a hazard of incrimination is generally determined from the "examination of the questions, their setting, and the peculiarities of the case."
 
 
 19
 Chesnoff, 13 F.3d at 1295 (citation omitted) (quoting United States v. Neff, 612 F.2d 1235, 1239-40 (9th Cir.1980), cert. denied, 447 U.S. 925 (1981)). The questions the witness refuses to answer need not be directly incriminating but only such as would furnish a link in a chain of evidence needed to prosecute the witness for a federal crime. See Hoffman, 341 U.S. at 486; Chesnoff, 13 F.3d at 1295; United States v. Rendahl, 746 F.2d 553, 555 (9th Cir.1984).
 
 
 20
 If after examination of the questions in context the district court concludes that they pose no threat of self-incrimination, the burden then shifts to the witness to " 'show that answers to [the questions] might criminate him.' " Neff, 612 F.2d at 1240 (quoting United States v. Weisman, 111 F.2d 260, 261 (2d Cir.1940)). Such a showing does not, however, require the witness to " 'prove guilt to avoid admitting it.' " Id. (quoting Marchetti v. United States, 390 U.S. 39, 50 (1968)).
 
 
 21
 It is clear from the record that the questions to be asked of Glessner did not "of themselves, suggest that the response would be incriminating." See Neff, 615 F.2d at 1240. It is also clear from the record that the government does not believe that Glessner was engaged in any wrongdoing, and in fact is of the opinion that Glessner merely prepared the tax returns in question based upon working papers provided to him by the Stoddards. Glessner declined the court's invitation to make an in camera showing that the questions might in some way be incriminating to him.
 
 
 22
 Finally, the peculiarities of this case suggest that Glessner is not concerned with being implicated in some illegal tax scheme as a result of his preparation of the Stoddards' tax returns, but rather that he is concerned about some "imaginary and unsubstantial" future proceeding in which he will be punished by the government for his views on the Constitution and the tax codes. See Chesnoff, 13 F.3d at 1295.
 
 
 23
 Under these circumstances, Glessner cannot invoke the Fifth Amendment privilege against self-incrimination as a reason not to answer the questions asked of him before the grand jury. See id. at 1296; Neff, 615 F.2d at 1240-41.
 
 
 24
 Accordingly, the district court did not abuse its discretion by finding Glessner in civil contempt of court for his failure to testify before the grand jury.
 
 
 25
 d. Remaining Issues
 
 
 26
 Glessner also argues that the First Amendment confers upon him a right not to speak to the grand jury. In light of Glessner's lack of relevant argument in support of this claimed right, we deem this issue waived on appeal. See American Int'l Enter., Inc. v. F.D.I.C., 3 F.3d 1263, 1266 n. 5. (9th Cir.1993).
 
 
 27
 Finally, Glessner moved to strike three exhibits contained in the government's supplemental excerpts of record, as well as all reference to those exhibits in appellee's argument, because the documents in question appear never to have been admitted into evidence before the district court. Although the documents were marked as government exhibits, it appears that they were never admitted into evidence. Accordingly, these documents and all reference to them are ordered stricken from the government's filings on appeal. See Fed.R.App.P. 10(a); United States v. Sanchez-Lopez, 879 F.2d 541, 548 (9th Cir.1989) ("[E]xhibits and papers not filed with the district court are not part of the appellate record.").[1]
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit R. 36-3
 
 
 [1]
 In this time-critical appeal, appellant's reply brief was not received until late in the afternoon on Tuesday, August 29, one day late. Appellant provided neither a motion to file a late brief nor any explanation for the late filing. The court construes the brief in part as a motion to file a late reply brief. So construed, the motion is denied and the brief shall not be filed by the Clerk or considered by the court